UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD R. CALKINS, | No. C 05-3193 PJH (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| vs. | |
| JAMES A. YATES, Warden, | |
| Respondent. | |

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. At petitioner's request, the court stayed the case to allow him to complete state court exhaustion of his third claim. After doing so, the court granted petitioner's request to reopen the case and ordered respondent to show cause why the writ should not be granted based on petitioner's three cognizable claims for relief. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Although given an opportunity to do so, petitioner did not file a traverse. For the reasons set out below, the petition is denied.

**BACKGROUND**

In 2002, petitioner pled guilty to charges of voluntary manslaughter, attempted residential robbery, and residential burglary in Marin County Superior Court. Pursuant to the plea agreement, the trial court sentenced him to a term of twenty-eight years in state prison. He unsuccessfully appealed his conviction to the California Court of Appeal, and on May 12, 2004, the California Supreme Court denied his petition for review. Thereafter, on

June 14, 2006, the California Supreme Court denied petitioner's petition for a writ of habeas corpus.

Petitioner does not dispute the following facts, which are excerpted from the opinion of the California Court of Appeal:

> On January 21, 2000, Calkins and Andrew Clayton decided to rob Matthew Cady, whom they believed was in possession of up to a pound of methamphetamine and $58,000 in cash. In preparation for the robbery, Calkins and Clayton took steps to disguise themselves. They assembled extra layers of clothing, cut pantyhose to be used as masks, and used dishwashing gloves and tape applied to their fingertips to avoid leaving fingerprints at the crime scene. Clayton gave Calkins a .357 revolver and armed himself with an automatic weapon.
> Very early the next morning, the two men drove in separate vehicles to a spot near Cady's house. As they walked down a driveway toward a shed where they believed Cady was sleeping, they triggered a motion sensor. Someone emerged from the shed and shined a spotlight, but Calkins and Clayton hid behind a fence. When this person went back inside the shed, Calkins and Clayton continued to approach, with their guns drawn. Violence ensued when they reached the shed door. Clayton fired a single shot, which struck Chris Deming in the chest, then Clayton immediately fled. Meanwhile, an injured Deming wrestled Calkins to the ground in an attempt to take the revolver from Calkins' hands, and Cady struck Calkins repeatedly with a baseball bat. Calkins eventually broke free and fled to a neighbor's yard, where he hid until daylight. He was apprehended later that morning while en route to a hospital, Sheriff's deputies found Deming lying on the ground next to the revolver Calkins had been carrying. Deming died from his injuries.

(Resp. Ex. F at 1-2.)

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

2

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**DISCUSSION**

As grounds for habeas relief petitioner asserts that: (1) the trial court's refusal to consider petitioner's cooperation with the government in prosecuting his co-defendant was a violation of the plea bargain and his due process rights; (2) the court's imposition of the upper term on the manslaughter conviction was a violation of the plea agreement and due process; and (3) his Fifth, Sixth and Fourteenth Amendment rights were violated when the sentence was based on facts which petitioner did not admit and which were not tried to a jury.

**I.      Violation of Plea Bargain**

Petitioner claims that the trial court's failure to consider his cooperation with the government in imposing an upper-term sentence of twenty-eight years in state prison violated his plea agreement and his right to due process. The plea agreement gave the trial court the discretion to impose a sentence of thirteen, seventeen, or twenty-eight years in state prison. (Resp. Ex. A (Clerk's Transcript ("CT")) at 273.) Petitioner argues that he "reasonably believed that under the plea agreement the extent of his cooperation in the prosecution of his co-defendant would be considered in deciding the appropriate sentence." (Petition at 6a.)

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). Fundamental fairness of due process requires that promises made during plea bargaining and analogous contexts be respected. *See Johnson v. Lumpkin*, 769 F.2d 630, 633 (9th Cir. 1985). That a petitioner is entitled to habeas relief if a prosecutor breaches a plea agreement is clearly established Supreme Court law within the meaning of the 28 U.S.C. § 2254(d)(1). *Gunn v. Ignacio*, 263 F.3d 965, 969-70 (9th Cir. 2001). A party breaches a plea bargain if it fails to live up to the promises it made under the agreement. *See Buckley v. Terhune,* 441 F.3d 688, 698 (9th Cir. 2006) (en banc).

To begin with, petitioner does not claim that the prosecutor, or any party to the agreement, failed to fulfill any promises or live up to any of the terms in the plea agreement. Rather, petitioner's complaint is with the trial court that sentenced him, which he claims failed to adequately consider his cooperation in imposing the sentence. The trial court was not, however, a party to the plea agreement. Plea agreements are contractual in nature and subject to contract law standards of interpretation. *See In re: Ellis*, 356 F.3d 1198, 1209 (9th Cir. 2004). As the trial court was not a party to the plea agreement, it cannot be said to have breached the agreement or thereby violated petitioner's right to due process. *Cf. Johnson v. Lumpkin*, 769 F.2d 630, 633 (9th Cir. 1985) (federal prosecutor's promise

4

1 cannot bind state authorities).

2       Moreover, the sentence imposed by the trial court was not contrary to any reasonable expectation petitioner could have had under the terms of the agreement. The plea agreement required petitioner's cooperation with the government in the prosecution of his co-defendant. CT at 27-78. In exchange for this cooperation, petitioner received the benefits of the plea agreement, under which the prosecutor agreed to reduce the crime charged from first degree murder with special circumstances, carrying possible sentences of death or life in prison, to involuntary manslaughter with a maximum possible sentence of twenty-eight years. The agreement did provide two alternative and shorter sentences, to terms of thirteen or seventeen years, but left the choice of sentences to the trial court's discretion. CT at 273. There was no guarantee or promise that petitioner would receive a lower sentence in exchange for cooperating; the only promise was that the trial court would exercise its discretion in choosing among the three possible sentences, which is undisputedly what the trial court did. That it exercised its discretion to choose the twenty-eight-year term does not contravene the terms of the plea agreement.

      Finally, the record is clear that the trial court, in opting for the longest sentence authorized by the plea agreement, did in fact consider petitioner's cooperation with the government, but concluded that such cooperation was outweighed by the other circumstances of petitioner's crime. As explained by the California Court of Appeal:

> The court reached its decision after considering sentencing statements from both sides and hearing from the victim's family and Calkins himself. The prosecution argued several aggravating factors supported the imposition of upper terms. In committing the offense, Calkins was armed with a fully loaded firearm (Cal. Rules of Court, rule 4.421(a)(2)) and he knew his intended victim was particularly vulnerable in that the victim was unsuspecting and unarmed (rule 4.421(a)(3)). The crime was an attempt to take something of great monetary value (rule 4.421(a)(9)), and it involved great violence and callousness (rule 4.421(a)(1)) because Clayton and Calkins were motivated only by their desire to steal the drugs and money. Moreover even after Deming had been fatally shot in the chest, Calkins continued to grapple with him for control of the weapon Deming was trying to take away (apparently, in an effort to protect others inside the shed). Calkins did not deny he was a willing participant in the robbery (rule 4.421(a)(4)), and the evidence showed he and Clayton took extensive and sophisticated steps to prepare for the crime by disguising their identities, preventing fingerprints and planning their escape (rule 4.421(a)(8)). With respect to facts about the defendant, the

prosecution argued all aggravating factors of rule 4.421(b)(1)) and had sustained numerous prior convictions of increasing seriousness (rule 4.421(b)(2)). Calkins previously served a prison term (rule 4.421 (b)(3)), and he had been released on parole only nine months before committing the present offense (rule 4.421(b)(4)). Finally, all of his prior periods on probation had been terminated "'with "unsuccessful" results'" (4.421(b)(5)).

Calkins' statement in mitigation described his cooperation with prosecutors in providing evidence against Clayton, yet the defense did not attempt to present this cooperation as a "mitigating factor" under the Rules of Court. Instead, the defense sought mitigation based on Calkins' probable attention deficit disorder, which arguably constituted "a mental or physical condition that significantly reduced culpability for the crime" (rule 4.423(b)(2), and his intoxication on methamphetamine and marijuana when the crime was committed, which arguably made his participation partially excusable due to his diminished capacity (rule 4.423(b)(4). While admitting to some initial evasive behavior, Calkins also sought mitigation based on his early acknowledgment of wrongdoing (rule 4.423(b)(3)) and his expression of remorse. At the sentencing hearing, defense counsel stressed the value of Calkins's cooperation in the prosecution of his co-defendant. Calkins identified Clayton as the shooter, and he was prepared to be the principal witness against Clayton at trial. Counsel asserted the value of this cooperation "demand[ed]" Calkins receive something less than aggravated terms.

In explaining his decision to impose upper terms, the trial judge told Calkins, "I don't think that your cooperation or anything else can ever satisfy the fact that this was a very strong first degree murder with special circumstances. And I think you basically got your benefit out of the process at the front end . . . " After discussing the interests of the community, and the victim's family, in punishment, the court repeated, "You deserve consideration for your cooperation, and I think you got that up front. But all of the factors in aggravation and mitigation considered, it appears to me that this is an aggravated term situation, not only as to the princip[al] charges, but as to the enhancements as well."

Calkins reads too much into the court's statements when he insists the court "refused to consider" his cooperation in sentencing. The court listened to counsel's argument on the subject and remarked that, having listened to Calkins' testimony at Clayton's preliminary hearing, he was well equipped to judge the quality of Calkins' cooperation which appeared to be "complete and unequivocal." However the court determined it was not appropriate to apply this cooperation as a mitigating factor in the sentencing because Calkins' full cooperation was already compelled by the plea agreement. The court did not abuse its discretion in reaching this conclusion. In exchange for his cooperation, the plea agreement gave Calkins a substantial benefit – i.e., the reduction of charges against him from special circumstances murder, and its potential punishment by death or life imprisonment, to voluntary manslaughter. By testifying against his codefendant, Calkins merely upheld his end of the bargain, and we agree with the trial court that such cooperation did not automatically warrant mitigation of Calkins' sentence. Cooperation in a pending prosecution is not generally a fact to be considered as a "circumstance in mitigation" in sentencing. (See rule 4.423.) While cooperation might constitute a relevant mitigating factor under some circumstances, the terms of the plea agreement here make it clear that

6

Calkins' cooperation was largely, if not entirely, motivated by self-interest. (Resp. Ex. F at 4-6.)

As described by the Court of Appeal, the record indicates that the trial court, contrary to petitioner's assertion, did consider his cooperation before imposing the sentence. Such cooperation was simply outweighed, in the trial court's estimation, by the aggravating circumstances of the offense – such as the violence, the planning, the unarmed victim, etc., and by the substantial "up front" benefit petitioner had already received for his cooperation. As the plea agreement expressly provided that the trial court could exercise its discretion to impose a sentence of twenty-eight years, its decision to do so did not constitute a "breach" of the plea agreement in violation of petitioner's right to due process.

Accordingly, petitioner is not entitled to habeas relief on this claim.

## II.   Upper Term Sentence

Petitioner claims that the trial court "violated petitioner's reasonable expectations under the plea agreement" and to due process by using the aggravating circumstances to impose an upper term sentence because the plea agreement already "accounted for" those circumstances by "authorizing the court to impose consecutive sentences." (Petition at 6a.) To begin with, for the reasons discussed above, while a due process violation may result from the breach of a plea agreement, the trial court could not have breached the plea agreement because it was not a party to it. In any event, as explained by the California Court of Appeal, there is no indication in the plea agreement or elsewhere in the record that the aggravating circumstances of the offense were "accounted for" by the consecutive terms, much less that the sentencing judge was precluded from imposing an upper term sentence based on such factors. (Resp. Ex. F at 6-7.) To the contrary, the plea agreement expressly allowed for an upper term sentence of twenty-eight years. Moreover, under California law, absent an agreement to the contrary, the trial court was required to consider the aggravating circumstances in selecting  which sentencing term to impose. See Cal. Ct. Rule 4.409 (providing that enumerated factors "shall" be considered by sentencing judge). Accordingly, the imposition of the upper term sentence did not violate the plea agreement,

7

or petitioner's right to due process, and petitioner is not entitled to habeas relief on this claim.

### III. Determination of Aggravating Sentencing Factors

Petitioner claims that his Fifth, Sixth and Fourteenth Amendment rights were violated when the trial court imposed an upper-term based on its own finding of aggravating factors, which factors petitioner did not admit and which were not tried to a jury. The trial court found the following aggravating factors supported an upper-term sentence: (1) that the facts could have supported a conviction for first degree murder with special circumstances, (2) that the crime involved planning and professionalism, (3) that petitioner unlawfully possessed a firearm, and (4) petitioner's prior criminal record. Petition at 6a; Resp. Ex. F at 4-5; *see also* Cal. R. Ct. 4.421(a). Based thereon, the trial court imposed an upper term sentence on petitioner's conviction for manslaughter and the firearm use enhancement.

Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 488-90 (2000); *see Cunningham v. California,* 127 S. Ct. 856, 871 (2007) (finding *Apprendi* points to the middle term specified in California's statutes, not the upper term, as the relevant statutory maximum; therefore, California's determinate sentencing law violates the Sixth Amendment because it authorizes the judge, not the jury, to find the facts permitting an upper term sentence). Although the trial court in this case, and not a jury, found the aggravating factors in support of an upper-term sentence, petitioner waived in his plea agreement his right to a jury making such findings. "Nothing prevents a defendant from waiving his *Apprendi* rights" in connection with a guilty plea. *Blakely v. Washington,* 542 U.S. 296, 310 (2004). "When a defendant pleads guilty, the Sate is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents

to judicial factfinding." *Id.*[1]

Here, petitioner agreed that the trial court, and not the jury, would have the sole authority to determine his sentence. Petitioner agreed to the following provisions in his plea agreement: "I understand that I have a right to a jury trial . . . I waive (give up) my right to a jury . . . I further understand that I have these same constitutional rights with respect to any prior convictions, enhancements and special allegations which are set forth in the Information. I also waive my constitutional rights with respect to such prior convictions, enhancements and special allegations which are set forth in the Information." CT at 272. "I understand for my convictions as enumerated above I shall receive a term in state prison of thirteen years, seventeen years or twenty-eight years. CT at 273. "I understand that the matter of sentence is to be determined solely by the court." CT at 278. Pursuant to these provisions in the plea agreement, petitioner expressly waived his right to have the jury make findings pertaining to his sentence, and agreed that the trial judge would have sole responsibility for choosing between the lower, middle and upper sentence terms. As petitioner waived his rights under *Apprendi* and *Blakely* in his plea agreement, he is not entitled to habeas relief on this claim.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: 1/23/09

PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.05\CALKINS193.DENY.wpd

---

[1] It appears that *Apprendi*, as expanded in *Blakely*, does apply to petitioner's case because *Cunningham* applies retroactively on collateral review to convictions that became final on direct review after the decision in *Blakely* on June 24, 2004. *Butler v. Curry*, 528 F.3d 624, 639 (9th Cir. 2008). The conviction in this case became final for purposes of retroactivity when the time for filing a petition for a writ of certiorari in the United States Supreme Court expired, i.e. on August 14, 2008, ninety days after the California Supreme Court's denial of the petition for direct review.